UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,         :
                                :         **MEMORANDUM**
v.                            :         **OPINION AND ORDER**
                                :
ROSHEEN HILLIARD,           :         17 CR 35-01 (VB)
                       Defendant.     :
------------------------------------------------------------x

Now pending is defendant Rosheen Hilliard's renewed motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for a reduction of his term of imprisonment to "time served," with "a sentence of supervised release with home confinement for the remaining balance of the 108 months of imprisonment originally imposed by the Court, to be followed by another four years of supervised release, as originally imposed, without home confinement."  (Doc. #144 ¶ 29).

For the following reasons, the motion is DENIED.

The current COVID-19 pandemic is an unprecedented worldwide catastrophe.  But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like Hilliard, whose medical conditions and risk of contracting the virus cannot, by any reasonable definition, be deemed "extraordinary and compelling."  See 18 U.S.C. § 3582(c)(1)(A)(i).

First, Hilliard's offense was exceptionally serious.  At trial, the government established that over a two-year period, from 2015 through 2016, Hilliard played a central role in a sophisticated scheme to traffic and distribute heroin in and around Sullivan County, New York. He recruited the other members of the conspiracy and supplied the heroin transported and sold by those recruits.  He also employed a group of couriers to deliver heroin to, and collect payments from, street-level drug dealers, who, in turn, distributed the heroin to their own customers.

At sentencing, the Court found Hilliard responsible for the distribution of more than 700 grams, but less than a kilogram, of heroin, and that he was the organizer and leader of an extensive drug trafficking organization that involved at least six other participants. Those other participants were not just his co-conspirators, they were his underlings; and Hilliard was a very demanding boss. The sole reason Hilliard ran this drug trafficking operation was to make as much money as possible, as quickly as possible. He took careful and elaborate steps to evade detection by law enforcement. And, most importantly, his actions directly contributed to the pain and suffering and social ills of Sullivan County, a sparsely populated and largely rural upstate New York community.

Despite an applicable Sentencing Guidelines range of 151 to 188 months' imprisonment, applying the factors set forth in 18 U.S.C. § 3553(a), the Court imposed a sentence of 108 months' imprisonment, to be followed by a four-year term of supervised release. The Court did so in consideration of Hilliard's brutal and chaotic upbringing and the strong support of his family and friends, and also to ensure that the sentence not represent an unwarranted disparity from many other sentences the Court had imposed in other Sullivan County drug cases. The sentence was sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant.

Hilliard has been detained since his arrest on December 8, 2016. He has served approximately 42 months of his 108-month sentence, or about thirty-nine percent of the sentence imposed.

Second, Hilliard has not demonstrated "extraordinary and compelling reasons" to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed prison

sentence—taking into account critical data such as his medical history.  Hilliard is 40 years old.

He is not elderly.  He has hepatitis C, which is asymptomatic, and his medical records indicate

the Bureau of Prisons ("BOP") medical staff have consistently determined he does not suffer

from hypertension, chronic lung problems, or any cardiovascular, cardiopulmonary, or

respiratory ailments—conditions that would place Hilliard at a higher risk from COVID-19.  He

also has a cyst on one of his kidneys, which BOP is monitoring and, according to Hilliard's

medical records, does not require urgent attention.  Indeed, Hilliard's medical file indicates BOP

has regularly monitored, and continues to monitor, Hilliard's medical status, and has also

provided routine treatment, including laboratory testing.

      For example, in November 2019, medical staff at Federal Correctional Institution ("FCI")

Elkton, where Hilliard was then being held, offered Hilliard a certain treatment for his hepatitis

C.  But Hilliard refused this treatment, and instead opted to proceed with an upcoming transfer to

the minimum security prison camp at FCI Fort Dix, where Hilliard is currently incarcerated.

Hilliard refused the treatment despite warnings that the treatment available at FCI Elkton might

not be available at FCI Fort Dix.  Nevertheless, medical staff at FCI Fort Dix have continued to

monitor Hilliard's condition, and as of January 9, 2020, his hepatitis C remained asymptomatic.

      Of course Hilliard is at risk for contracting the virus at FCI Fort Dix.  However, the Court

is persuaded by the government's submission that FCI Fort Dix has taken substantial measures to

respond to the COVID-19 threat at its facility, which have in fact mitigated its spread, and has

the means to competently care for its inmate population.  Indeed, when Hilliard exhibited

symptoms of COVID-19 in mid-April 2020, he was promptly placed in isolation, received daily

and thorough care from FCI Fort Dix medical personnel, and also received two separate tests for

the virus, both of which returned negative.  FCI Fort Dix's handling of Hilliard's case is

demonstrative of its ability to provide adequate care to Hilliard, even if he were to contract COVID-19.

In support of his motion, Hilliard likens his circumstances to that of Alberto Pena, a 60 year old defendant who pleaded guilty to committing Hobbs Act robbery, had already served more than two-thirds of his sentence, would have been eligible for transfer to home confinement in approximately one year, suffers from hypertension and hyperlipidemia (among other ailments), and whose application for compassionate release from FCI Fort Dix was recently granted.  (See Doc. #145 at 6–7 (citing United States v. Pena, 2020 WL 2301199 (S.D.N.Y. May 8, 2020)).  However, every case is unique, and the comparison to Pena fails to persuade.  First, the court in that case found that Pena's medical condition significantly increased the likelihood of serious complications from COVID-19, whereas Hilliard's asymptomatic hepatitis C—and absence of hypertension, or any cardiovascular or respiratory condition—while consequential, does not expose Hilliard to a significantly increased likelihood of serious complications from COVID-19.  Second, to date, Hilliard has served less than half of his sentence of imprisonment.  And third, whereas Pena had a limited criminal history, which supported his compassionate release and a reduction of his sentence, Hilliard had sustained nine adult criminal convictions and served at least four separate jail sentences prior to his arrest in this case.  Accordingly, Hilliard's circumstances are not at all like Pena's.

Hilliard also compares his situation to that of another defendant, Sterling Anderson, with severe obesity, who had served more than half of his sentence, and who too was recently granted compassionate release from FCI Fort Dix.  (See Doc. #152 at 2) (citing United States v. Anderson, 2020 WL 2849483 (S.D.N.Y. June 2, 2020)).  Again, this comparison falls short.  Like Pena, Anderson exhibited a serious medical condition which put him at heightened risk of

serious complications from COVID-19.  United States v. Anderson, 2020 WL 2849483, at *1

(noting "Anderson's severe obesity places him in that group" of inmates whose preexisting

medical conditions put them at heightened risk of complications from COVID-19).  But as noted

above, Hilliard's current medical state, as demonstrated by his medical records, does not expose

him to a significantly increased likelihood of serious complications from COVID-19.  Moreover,

Anderson, like Pena, had served the majority of his sentence, which the court noted was

sufficient to meet his original sentence's "retributive, deterrent, and incapacitative purpose," id.

at *2.  Here, Hilliard has served only 42 months, or thirty-nine percent, of his 108-month

sentence.  For these reasons, Anderson's circumstances, like Pena's, are clearly distinguishable

from Hilliard's.

Finally, as required by Section 3582(c)(1)(A), the Court has considered "the factors set

forth in section 3553(a) to the extent that they are applicable."  The exceptionally serious nature

of the offense and Hilliard's lengthy criminal history warranted a lengthy sentence at the time it

was imposed; those same factors counsel strongly against cutting that sentence by more than

sixty percent.  Moreover, the sentence was designed to promote respect for the law and provide

just punishment for the offense.  To dramatically reduce the sentence in light of the current

public health crisis would neither be just nor promote respect for the law; if anything, it would

promote disrespect for the law.  And shortening Hilliard's sentence would also undermine two

other critical sentencing objectives in this case: the need for the sentence imposed to afford

adequate deterrence to criminal conduct and to protect the public from further crimes of the

defendant.  These sentencing factors not only supported the sentence at the time it was imposed, they also weigh strongly against Hilliard's early release.[1]

Accordingly, for the reasons set forth above, defendant Rosheen Hilliard's motion for a reduction of his term of imprisonment is DENIED.

Dated: June 15, 2020
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

---

[1]     The parties dispute whether and to what extent the commentary to Section 1B1.13 of the Sentencing Guidelines provides applicable guidance as to the "extraordinary and compelling reasons" standard set forth in Section 3582(c)(1)(A)(i).  The Court takes no position on the matter.  Whether or not the standards reflected in the commentary apply, the Court concludes for the reasons set forth herein that Hilliard has failed to demonstrate extraordinary and compelling reasons to warrant a reduction of his sentence and the relief sought.

Moreover, the government disputes whether Hilliard's request as styled—that the Court order his immediate transfer to home confinement to serve the balance of his term of imprisonment, without reducing the sentence imposed—is proper.  However, Section 3582(c)(1)(A) states in pertinent part:  "[T]he court . . . may reduce the term of imprisonment (and may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)."  Home confinement would be a condition of supervised release if Hilliard were released.  Accordingly, the Court need not address the parties' disagreement respecting the precise phrasing of Hilliard's request.